NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 26 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEX AGUILAR, JR., et al., | No. 19-55764 |
| Plaintiffs-Appellants, | D.C. No. 2:17-cv-04382-CBM-MRW |
| v. | |
| CITY OF LOS ANGELES, et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted January 15, 2021
Pasadena, California

Before: CALLAHAN and WATFORD, Circuit Judges, and RAKOFF,** District
Judge.
Dissent by Judge CALLAHAN

On June 9, 2016, Alex Aguilar was arrested by officers of the Los Angeles

Police Department ("LAPD"), including Officers Matthew Medina and Sergio

Melero, for a nonviolent misdemeanor. At the police station, Aguilar attempted to

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

swallow a bindle of heroin. Then, within one minute, Medina tased Aguilar five times and Melero punched Aguilar three times in the cheek. Aguilar struggled to breathe and lost consciousness. He died soon after.

The LAPD conducted an in-custody death investigation. The majority of the LAPD Use of Force Review Board recommended finding that the use of force was consistent with LAPD policy, but a minority opinion recommended finding that Medina's taser use violated LAPD policy. The LAPD Chief of Police recommended that the Department endorse the minority position because "an officer with similar training and experience as Officer Medina would not reasonably believe Aguilar's actions were violent or posed an immediate threat to himself or others at the time Officer Medina applied the TASER to Aguilar's back." The Chief recommended finding that the taser use was not "objectively reasonable" and was therefore "Out of Policy." The Board of Police Commissioners, LAPD's governing body, unanimously agreed with the Chief's recommendations.

The decedent's family then brought this lawsuit against the City of Los Angeles, Medina, Melero, and other officers allegedly involved in the incident. Plaintiffs intended to offer into evidence at trial "the LAPD's post-incident findings that Defendant Medina's use of the taser during the underlying incident was objectively unreasonable and 'out of policy'" (the "LAPD Findings"). However, the trial court granted defendants' motion in limine to exclude the LAPD Findings. We

review the trial court's evidentiary rulings for abuse of discretion. *Wicker v. Oregon ex rel. Bureau of Labor*, 543 F.3d 1168, 1173 (9th Cir. 2008). However, we review de novo legal conclusions on which the trial court's evidentiary rulings depend because "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

The trial court excluded the LAPD Findings for two reasons. First, it held that the LAPD Findings were inadmissible as a subsequent remedial measure. Federal Rule of Evidence 407 protects parties that take "remedial measures" following an incident—*i.e.*, measures that "would have made an earlier injury or harm less likely to occur"—by preventing factfinders from considering such measures to prove "culpable conduct." Fed. R. Evid. 407. Examples of remedial measures include "subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees." Fed. R. Evid. 407 advisory committee's note. For instance, in *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986), this Court affirmed the district court's determination that a "disciplinary proceeding [against a police officer] constituted a remedial measure." *Id.* at 1417.

Here, by contrast, the LAPD conducted an in-custody death investigation, not a disciplinary proceeding. If the LAPD Findings had prompted disciplinary action, policy changes, or the like, then evidence of those subsequent remedial actions

would have been inadmissible to prove culpable conduct. But the LAPD Findings themselves were retrospective, not remedial; they assessed what happened and whether the officers' actions were consistent with LAPD policy, without meting out discipline or changing LAPD policy. Therefore, the trial court's holding that Rule 407 compelled exclusion of the LAPD Findings was legal error.

The district court also excluded the LAPD Findings under Federal Rule of Evidence 403, which permits exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403. The trial court's ruling was brief: "Balancing pursuant to 401, 402, and 403, the Court finds the [LAPD Findings] [are] more prejudicial than probative." The trial court then quoted *Maddox*, 792 F.2d at 1417, for the proposition that "[t]he jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence."[1] Finally, the trial court included a "see also" citation to a district court case, *Vazquez v. City of Long Beach*, 2016 WL

---

[1] The trial court also quoted *Maddox*'s reasoning that "the jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings." 792 F.2d at 1417. But, as noted, the LAPD Findings were not disciplinary proceedings; they announced the LAPD's conclusions following an investigation into Aguilar's death. A reasonable juror would recognize that the LAPD's decision to investigate an in-custody death did not necessarily imply any officer's culpability, so this reasoning from *Maddox* is inapposite. Moreover, other evidence at trial revealed to the jurors the existence of this investigation.

9114912, at *2 (C.D. Cal. Apr. 19, 2016).[2]  We infer from the citations and explanatory parentheticals that the trial court's Rule 403 determination rested on two bases: that the LAPD Findings were likely to produce juror confusion and that they may have been afforded undue weight.

The jury might have been confused by the fact that LAPD policy on the use of force parallels closely, if not completely, the § 1983 standard.  They might have struggled to differentiate between two inquiries—whether the officers' use of force was objectively reasonable (the ultimate question under § 1983) and whether the officers complied with LAPD policy (a separate, relevant, but not dispositive question).  The trial court permitted opinion testimony on the latter question, but not

---

[2] The trial court noted that the *Vazquez* court excluded certain post-incident findings, holding that they were "hearsay" and "not relevant or admissible," (quoting *Vazquez*, 2016 WL 9114912 at *2 (internal quotation marks omitted)).  The trial court in this case did not state that it was relying on those rationales, nor could it reasonably have done so.  No party argues that the LAPD Findings are inadmissible hearsay.  And the LAPD Findings are plainly relevant because, in assessing whether an officer acted reasonably in the use of force, a juror can reasonably consider whether the officer complied with police department policy.  The LAPD Findings are probative on that issue.

The trial court also noted that the *Vazquez* court reasoned that "conclusions in the report were based on evidence collected during the investigation which may or may not be the same evidence the jury would be exposed to at trial."  While this observation applies also to this case, it cannot reasonably support excluding the LAPD Findings.  To the extent the LAPD Findings were based on evidence not presented to the jury, the defendants could have sought to introduce such evidence.  To the extent the jury was presented with evidence not before the LAPD, the defendants could have made that straightforward point in their closing arguments.

the former. The LAPD Findings might have introduced confusion because they answered *both* questions, concluding that Medina's taser use was "Out of Policy" *because* the force was not "objectively reasonable." The merger of these standards might have confused jurors and heightened the chance that jurors would have deferred to LAPD insiders (like the Board of Commissioners) on the ultimate question presented.

The trial court's in limine rulings drew a line to attempt to prevent such juror confusion: the court permitted the introduction of evidence regarding whether the officers complied with LAPD policy but excluded evidence regarding whether the officers' use of force was objectively reasonable. For example, the defense sought to introduce the opinion of its expert, James Katapodis, that Medina's taser use was objectively reasonable. Consistent with its exclusion of the LAPD Findings, the district court excluded such testimony, finding that "[w]hether Medina's use of the taser was reasonable is a question for the jury."[3]

In addition to the risk of confusion, the trial court also found that jurors might have assigned the LAPD Findings undue weight. Although the defendants could have introduced the Use of Force Review Board's majority opinion, showing that

---

[3] We infer from the trial court's quotation of *Maddox* that its Rule 403 determination rested on a risk of confusion between the two questions. If, by contrast, the trial court had excluded the LAPD Findings solely because they opined on an ultimate issue, then this would have been an abuse of discretion. Rule 704 of the Federal Rules of Evidence permits opinions that embrace an ultimate issue.

LAPD officers disagreed about the reasonableness of Medina's taser use, the fact remains that LAPD's governing body unanimously found that Medina violated LAPD policy. The jurors might have given such an admission overwhelming weight. Plaintiffs respond that the LAPD Findings are akin to a party admission by the City of Los Angeles, so any prejudice arising therefrom is fair. This argument is not without force, but plaintiffs sought to introduce the LAPD Findings against *all* defendants, not just the City. Against the individual officers, at least, the district court reasonably found that the evidence could have been given undue weight.

Although a reasonable jurist could have disagreed, nevertheless, we cannot say that the trial court's conclusion that the LAPD findings presented a risk of juror confusion and might have been accorded undue weight was an abuse of discretion.

Thereafter, however, circumstances changed as the trial proceeded. The defense chose to elicit expert testimony that undermined the bases for the district court's in limine ruling and opened the door for introduction of the LAPD Findings. Specifically, defense expert Katapodis testified that LAPD policy is based on objective reasonableness and that Medina's taser deployments complied with LAPD policy. He then explicitly testified that Medina's taser deployments were reasonable, violating the trial court's in limine ruling. The trial court struck Katapodis's testimony that the use of force was reasonable, and we presume that the

jury obeyed the court and disregarded Katapodis's answer that Medina's use of force was reasonable.

Nevertheless, striking that answer did not preclude the jury from connecting the dots Katapodis had already drawn. Indeed, this is why experts are in fact permitted to give their opinion on ultimate questions. *See* Fed. R. Evid. 704. LAPD policy requires objectively reasonable use of force. In Katapodis's view, Medina's taser use complied with LAPD policy. Ergo, in Katapodis's view, Medina's taser use was a reasonable use of force. Katapodis's testimony erased the distinction the trial court had attempted to draw between compliance with LAPD policy, on the one hand, and the objectively reasonable use of force, on the other, inviting the same potential jury confusion on which the trial court reasonably relied in excluding the LAPD Findings. If the plaintiffs had been permitted to introduce the LAPD Findings on cross-examination, the risk of *additional* juror confusion would have been minimal.

Katapodis's testimony also changed the "undue weight" analysis. Unsurprisingly, plaintiffs and defendants offered dueling expert opinions regarding whether Medina's taser use complied with LAPD policy. However, Katapodis did not merely claim expertise; he testified that he was a 35-year veteran of the LAPD who participated in the drafting of the use-of-force policy and implied that he could offer the LAPD's own view regarding the officers' conduct. ("[O]ur policy is based

on objectively [*sic*] reasonableness. So in our policy, given the same set of facts and circumstances that an officer had at the time that they used the force we take a look at it to see if the force options that they used were reasonable or not. And that's the policy of the department.") By itself, such testimony would be innocuous; after all, jurors were informed that Katapodis was a paid, external consultant. However, since the jury was presented with this testimony without the context of the LAPD Findings, the jury was left with a misleading impression regarding the LAPD's own view of Medina's conduct. Given Katapodis's apparent insider expertise and the exclusion of the LAPD Findings, there was a substantial risk that the jury might wrongly have concluded that the LAPD thought that Medina's use of force complied with LAPD policy. This substantial risk of a misunderstanding increased the probative value of the LAPD Findings and decreased the likelihood that they would be given undue weight.

In sum, Katapodis's testimony raised the very same issues that supported the trial court's in limine ruling: possible juror confusion and possible undue weight assigned to the opinion of someone purportedly able to speak for the Department. At that point, the probative value of the LAPD Findings was no longer substantially outweighed by the risk of unfair prejudice. By continuing to exclude the LAPD Findings, the district court abused its discretion.

When a district court abuses its discretion by excluding evidence, this Court will reverse unless we find that "the jury's verdict is more probably than not untainted by the error." *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983). Here, we cannot so find.

The district court instructed the jury that plaintiffs had to prove only one contested element to prevail on their § 1983 claim: that "the acts or failure to act of the defendant officer deprived Plaintiffs of their particular rights under the United States Constitution[.]"[4] Central to that determination was the jury's assessment of whether the officers used reasonable force. As previously noted, Katapodis's testimony invited the jury to conclude that, while external consultants (like plaintiffs' expert) might disagree, those who could speak authoritatively about LAPD policy condoned Medina's taser use. If the jury had known, however, that the LAPD itself viewed Medina's conduct as a violation of LAPD policy, then that likely would have altered the jury's assessment regarding whether a reasonable officer in Medina's shoes would have tased Aguilar five times. Because we cannot

---

[4] When a plaintiff proves a deprivation of a constitutional right by an officer acting under color of state law, regardless of causation and harm, (s)he will prevail and will recover at least nominal damages. *See Farrar v. Hobby*, 506 U.S. 103 (1992); *Engebretson v. Mahoney*, 724 F.3d 1034, 1038 (9th Cir. 2013). If the jury had ruled for the plaintiff, then it also would have been tasked with measuring damages, which would have required the jury to assess, for example, whether an unreasonable use of force caused Aguilar's death. However, we do not consider issues of causation or damages in assessing whether the verdict was tainted by error because plaintiffs had no obligation to prove either to prevail under § 1983.

conclude that the jury's verdict is more probably than not untainted by the erroneous exclusion of the LAPD Findings, we must vacate and remand for a new trial.  *See Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991).

**VACATED AND REMANDED.**

*Alex Aguilar, Jr. v. City of Los Angeles, et al.*, **No. 19-55764**

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority that the trial court's in limine ruling excluding the Los Angeles Police Department's post-incident findings was not an abuse of discretion. However, I disagree with its determination that the testimony of Katapodis, defendants' expert, shifted the balance so that the continued refusal to admit the post-incident findings became an abuse of discretion.

The majority recognizes that the court struck Katapodis' testimony that the use of force was reasonable, and that we presume that the jury followed the court's instructions. But they express concern that "striking that answer did not preclude the jury from connecting the dots." Even though they recognize that "this is why experts are in fact permitted to give their opinion on ultimate questions," the majority concludes that this testimony changed the "undue weight" analysis, and that the district court abused its discretion "[b]y continuing to exclude the LAPD Findings."

I disagree. First, plaintiffs were entitled to use their expert to rebut Katapodis' testimony concerning the propriety of the officers' conduct and his knowledge of LAPD's policy. Second, Katapodis' testimony did not change the fact that admitting the LAPD's post-incident findings would not likely assist the jury and might well confuse it. The majority of the LAPD Use of Force Review

Board recommended finding that the use of force was consistent with LAPD policy, but the LAPD Chief of Police and ultimately the Board of Police Commissioners endorsed the contrary minority position.  I cannot conclude that excluding such detailed post-incident findings, containing contradictory determinations, was an abuse of discretion.  Accordingly, I dissent.